UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **DARRELL DEWAYNE ROSS** | **CIVIL ACTION NO. 22-1062** |
| | **SECTION P** |
| VS. | |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **BOSSIER MAXIMUM SECURITY CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Plaintiff Darrell Dewayne Ross, a prisoner at Bossier Maximum Security Center ("BMSC") proceeding pro se and in forma pauperis, filed this proceeding on approximately April 21, 2022, under 42 U.S.C. § 1983. He names the following defendants: BMSC, Warden Linton Jacobs, Assistant Warden Anthony Evans, Deputy Starks,[1] Nurse Molly Lyies, and Sheriff Julian Whittington.[2]

For reasons below, the Court should retain Plaintiff's claims against Nurse Molly Lyies and Deputy Starks. The Court should dismiss Plaintiff's remaining claims against BMSC, Warden Linton Jacobs, Sheriff Julian Whittington, and Assistant Warden Anthony Evans.

**Background**

Plaintiff, a pre-trial detainee, alleges that BMSC failed to protect him from a virus, Covid-19. [doc. # 1, p. 4]. He alleges that "many trustees tested positive for Covid-19" and that on January 10, 2022, "some of the same trustees" were not wearing masks when they served him

---

[1] Plaintiff also uses the title, Sergeant, when referring to Starks.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

a lunch tray. *Id.* at 5. Plaintiff claims that when he asked Deputy Starks if he could "have another tray made by non-infected inmates[,]" Starks responded, "No." *Id.* Plaintiff alleges, "Upon knowing that the trustees had Covid-19 he still gave the tray to me making me feel that he don't care about my well being . . . [sic]." [doc. # 8, p. 2].

Plaintiff refers the Court to an administrative remedy procedure grievance he submitted to prison officials,[3] in which he wrote that on January 11, 2022, health officials tested every inmate and employee at the facility for Covid-19. [doc. # 1-2, p. 1]. On January 13, 2022, Plaintiff received a positive test result, indicating that he contracted Covid-19. *Id.* Plaintiff claims that BMSC, Warden Jacobs, Assistant Warden Evans, and Sheriff Julian Whittington failed to protect him from exposure to the virus. [doc. # 8, p. 1].

Plaintiff was quarantined for ten days. [doc. # 1, p. 5]. During those ten days, he suffered fatigue, emotional distress, and pain from severe headaches. *Id.* He describes his condition as "the worst illness of [his] life." *Id.* He claims that he was not given any medication to treat his symptoms. [doc. #s 4, p. 3; 8, pp. 1-2]. He suggests that he asked nurses for help with his symptoms, including his pain, but they only checked his temperature. *Id.* He claims that Nurse Molly Lyies never ensured that he was "alright" and "only did the head check and went on [her] way . . . ." *Id.* at 2.

Plaintiff claims that, while he was quarantined, he was not "given any disinfectant . . . to prevent spreading" the virus to others. [doc. # 4, p. 3]. He adds that "no consideration was given to prevent [him] from spreading Covid to other inmates." *Id.*

Plaintiff seeks monetary compensation for his pain, suffering, and emotional distress. *Id.* at 4.

---

[3] [doc. # 1, pp. 4-5].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. BMSC

Plaintiff names BMSC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24. BMSC does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against BMSC.

## 3. Standing

Plaintiff claims that he was not "given any disinfectant . . . to prevent spreading" the virus to others while he was quarantined. [doc. # 4, p. 3]. He adds that "no consideration was given to prevent [him] from spreading Covid to other inmates." *Id.*

Plaintiff lacks standing to pursue this claim. He does not allege that the lack of disinfectant caused him harm or injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (recognizing that to have standing, a plaintiff must have suffered an injury in fact that is "actual or imminent, not conjectural or hypothetical[.]") (citations and internal quotation marks omitted).[5]

---

[5] *See also Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) ("To have standing, a plaintiff must 'present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling.'" (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008)); *Thompson v. Scott*, 86 F. App'x 17, 18 (5th Cir. 2004) (holding that, because an inmate alleged no injury from a policy, he had no standing to raise a claim); *Colgrove v. Collins*, 62 F.3d 391 (5th Cir. 1995)

Moreover, Plaintiff lacks standing to pursue relief on behalf other inmates. Persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others. *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."). In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that "to the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners . . . , he lacks standing to bring those claims."); *see Kennedy v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan. 4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[6]

The Court should dismiss this claim.

**4. Supervisory Liability**

Plaintiff names Warden Jacobs, Assistant Warden Evans, and Sheriff Julian Whittington as defendants.

"Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.

---

(holding that a "speculative claim of injury is insufficient to satisfy Article III's requirements for standing.")).

[6] *See also Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights . . . ."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider . . . whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994). "'[A] plaintiff must show either [that] the supervisor personally was involved in the constitutional violation or that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation.'" *Brown v. Taylor*, 911 F.3d 235, 245 (5th Cir. 2018) (*quoting Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003)).

Here, Plaintiff does not plausibly allege that Warden Jacobs, Assistant Warden Evans, or Sheriff Julian Whittington affirmatively participated in any act that caused a constitutional deprivation or that there was a sufficient causal connection between their conduct and any alleged constitutional violation.[7] Rather, in a non sequitur, Plaintiff claims only that, because he tested positive, Jacobs, Evans, and Whittington failed to protect him from exposure to the virus. [doc. # 8, p. 1].

Plaintiff attaches his administrative remedy procedure grievance dated January 13, 2022, concerning Deputy Starks' action (or inaction) on January 10, 2022. [doc. # 1-2, p. 1]. Evans and Jacobs responded to the grievance at two different "steps" of the administrative remedy procedure. *Id.* at 2-4. However, Plaintiff does not allege that by responding to his grievance *after* the event of which he complains, Evans or Jacobs therefore participated in or caused Starks' action or inaction. In other words, he does not allege that Evans or Jacobs caused his

---

[7] *See Dedrick v. Richards*, 47 F.3d 425 (5th Cir. 1995) ("An official who is sued in her individual capacity cannot be liable under § 1983 on the theory of *respondeat superior;* to be liable she must have been personally involved in the plaintiff's injury."); *Salcido v. Univ. of S. Mississippi*, 557 F. App'x 289, 292 (5th Cir. 2014) ("To make out a § 1983 claim against the Defendants in their individual capacities, Salcido must show that they were either personally involved in the constitutional violations alleged or that their wrongful actions were causally connected to the constitutional deprivation.").

exposure to, or contraction of, Covid-19.[8] Instead, Plaintiff seems to plead only vicarious liability. *See Thompkins v. Belt*, 828 F.2d 298, 305 (5th Cir. 1987) ("[M]isconduct of Sheriff Belt's employees cannot be imputed to the sheriff individually . . . .").

Further, Plaintiff does not allege that Jacobs, Evans, or Whittington implemented an unconstitutional policy, practice, custom, or procedure that caused his exposure to, or contraction of, Covid-19. Accordingly, the Court should dismiss Plaintiff's claims against Evans, Jacobs, and Whittington.

**5. Medical Care**

During Plaintiff's ten days in quarantine, he suffered fatigue, emotional distress, and pain from severe headaches. [doc. # 1, p. 5]. He describes his condition as "the worst illness of [his] life." *Id.* He "did not think [he] was going to survive if [his] condition got worse." *Id.*

Plaintiff claims that he was not given any medication to treat his symptoms. [doc. #s 4, p. 3; 8, pp. 1-2]. He suggests that he asked nurses for help with his symptoms (including his pain) each time they "came to" him, but they only checked his temperature. *Id.* He did not receive any help from the nursing staff. He claims that Nurse Molly Lyies never ensured that he was "alright" and "only did the head check and went on [her] way . . . ." *Id.* at 2. By "head check[,]" Plaintiff suggests that Lyies only measured his body temperature.

To plead a plausible constitutional violation, a plaintiff "must demonstrate that a

---

[8] *See Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004) ("[I]it is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation."); *see also Taylor v. Cockrell*, 2004 WL 287339 at *1 (5th Cir. 2004) ("claims that [] defendants violated [a plaintiff's] constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Robinson v. U.S., Fed. Bureau of Investigation*, 185 F. App'x 347, 348 (5th Cir. 2006) ("The alleged failure to investigate complaints and to take action in response to them does not provide a basis for a civil rights suit.").

government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Here, construing Plaintiff's allegations liberally and in his favor at this early stage of the proceeding, he states a plausible claim against Nurse Lyies. He plausibly suggests that he asked Lyies for help for his symptoms[9]—which together constitute a serious medical need—that Lyies therefore knew of a substantial risk of serious harm, and that Lyies responded with deliberate indifference, conducting only a "head check" and thus rendering no meaningful medical care.[10]

---

[9] Alleging that he asked "nurses" for help for his symptoms, Plaintiff does not explicitly allege that he informed Nurse Lyies of his symptoms and asked Lyies for medical care for those symptoms. [doc. # 8, p. 2]. However, considering that Lyies is allegedly a nurse and that she allegedly failed to provide any aid other than a "head check," it is plausible that Plaintiff includes Lyies as one of the nurses from whom he sought aid for his symptoms.

[10] *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) ("Although Powell was aware of that substantial risk, she did nothing more than direct Easter to the pharmacy to obtain a refill of his nitroglycerin prescription. When Powell learned that the pharmacy was closed, she sent Easter back to his cell without providing him any treatment. There is no indication in the record that Powell did not have access to nitroglycerin or that she was unable to offer Easter any other treatment options. Accepting Easter's allegations as true, Powell was aware of a serious risk to Easter's health, yet turned a deaf ear to his request for medical treatment. . . . According to Easter's allegations, Powell refused to provide any treatment to, and ignored the complaints of, a patient suffering from severe chest pain that she knew had a history of cardiac problems.

The Court should retain this claim against Nurse Lyies.

**6. Deputy Starks**

Plaintiff alleges that "many trustees tested positive for Covid-19" and that on January 10, 2022, "some of the same trustees" were not wearing masks when they served him a lunch tray. He claims that when he asked Deputy Starks if he could "have another tray made by non-infected inmates[,]" Starks responded, "No." Plaintiff alleges, "Upon knowing that the trustees had Covid-19 he still gave the tray to me making me feel that he don't care about my well being . . . [sic]." On January 13, 2022, Plaintiff received a positive test result, indicating that he contracted Covid-19.

The Due Process Clause of the Fourteenth Amendment prohibits the punitive confinement of a pretrial detainee because by definition the guilt of a detainee has not been adjudicated. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). To determine the applicable analysis, courts must first classify the challenge as either an attack on a "condition of confinement" or as an "episodic act or omission." *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997). The former is a challenge to the "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996). In contrast, an "episodic act or omission" claim concerns a particular act or omission of one or more officials, and it focuses on "whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge." *Id.* at 645.

---

Powell's alleged conduct meets the 'deliberate indifference threshold.'"); *see also Galvan v. Calhoun Cnty.*, 719 F. App'x 372, 375 (5th Cir. 2018); *Alderson v. Concordia Par. Corr. Facility*, 848 F3d 415, 422-23 (5th Cir. 2017); *Coleman v. Sweetin*, 745 F.3d 756, 765-66 (5th Cir. 2014); *Perez v. Anderson*, 350 F. App'x 959, 962 (5th Cir. 2009).

Here, Plaintiff does not complain of general, widespread conditions, practices, rules, or restrictions; rather, he complains of an episodic act or omission: the failure to allow him to obtain a lunch tray prepared by someone other than a trustee who (1) was not wearing a mask and (2) contracted Covid-19.[11]

Thus, "[t]he relevant question becomes whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge . . . ." *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 463 (5th Cir. 2015) (internal quotation marks and quoted source omitted). "A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference. In other words, the state official must know of and disregard an excessive risk to inmate health or safety. [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (internal quotation marks and quoted sources omitted).

Here, construing Plaintiff's allegations liberally and in his favor at this early stage of the proceeding, he states a plausible claim against Deputy Starks. He plausibly claims: (1) that Starks knew of a substantial risk of serious harm because Starks knew that the trustees who prepared the food "had Covid-19"; and (2) that Starks disregarded an excessive risk to Plaintiff's health or safety because he "still gave the tray to [him]" and would not allow him to obtain a

---

[11] *See Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 526 (5th Cir. 1999) (characterizing the plaintiff's claims concerning two detention officers' failure to take better care of her and a third officer's failure to medically screen her as episodic omissions).

different tray prepared by a "non-infected" individual.[12] [doc. # 8, pp. 1-2]. The Court should retain this claim against Deputy Starks.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Darrell Dewayne Ross's claim that he was not provided disinfectant to prevent spreading Covid-19 to others be **DISMISSED WITHOUT PREJUDICE** for lack of standing and as frivolous.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Bossier Maximum Security Center, Warden Linton Jacobs, Sheriff Julian Whittington, and Assistant Warden Anthony Evans be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See*

---

[12] The undersigned is cognizant that Plaintiff does not appear to allege that Starks (i) caused the infected trustees to prepare the food; (ii) caused the trustees to prepare food without masks; or (iii) exposed him to the trustees (as opposed to the food the trustees prepared). However, as above, Plaintiff still pleads a plausible constitutional violation.

*Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 29th day of June, 2022.

                                              _____
                                              Kayla Dye McClusky
                                              United States Magistrate Judge